The next matter on our calendar is United States v. Chanju Carroll. Councils? Good morning, Your Honor, may it please the Court. My name is Andrew St. Laurent and I represent the appellant, Mr. Chanju Carroll. With the permission of the Court, I'd like to start my argument this morning with the which is the decision by the trial court to dismiss juror number six over the objection of the defense. And it is well established in this court that the dismissal of a deliberating juror is one that has to be closely scrutinized by the appellate court. And first off, this is obviously a difficult situation for any trial court judge to address. You are dealing with a human being, a juror who is facing a difficult set of circumstances, and as is often the case, and as was true in this case, is actively seeking to be removed from that jury. However, because this decision directly affects the rights of the defendant, specifically the right to a jury trial under the Sixth Amendment, and the rights more specifically to a unanimous verdict of the jurors, this court has adopted a very stringent standard for the review of the discharge of a juror. Specifically in United States v. Thomas, this court said that in all cases in which a juror is seeking to be relieved, or the court seeks to relieve the juror on the basis of allegations by fellow jurors, if there is any possibility that the juror's views on the merits of the case, rather than a purposeful intent to disregard the court's instructions, underlay the request that he be discharged, the juror must not be dismissed. And that's United States v. Thomas at 622. But in this case, Mr. St. Laurent, I mean, Judge Seibel declined his first request, sent him back in, and then it came out that he still was having difficulty, and then he acknowledged that he didn't think he could be fair and impartial. Isn't that kind of a game ender? Judge Sullivan, there were multiple requests by the juror to be discharged. It is not a game ender, because each of the times that the juror sought to be discharged, he made reference to the evidence, and specifically his view of that evidence. That's at 741 in the joint appendix, 744 twice in the appendix, and 745, where juror number six specifically referred to, quote, my evaluation of the case may be vastly different than before Judge Seibel cut him off. And once that bell has been rung, so to speak, it cannot be unrung. But wait, Judge Seibel cut him off because she didn't want him to get into the deliberations of the jury. She just wanted to focus on his bias or his inability to be a fair and impartial juror. But he did say, did he not say that he didn't think he could be fair and impartial? Yes, he did. But under the any possibility rule that's set out in Thomas, that is not sufficient. Because there is now a possibility that the juror's request to be discharged is based on his, in this case, evaluation of the evidence. He cannot be discharged. And the reasons for that rule are elaborated in Thomas and in Brown, which is the D.C. Circuit case from which it's taken. But it is in close to absolute rule in order to protect defendants who are in these circumstances entitled to unanimous decision by the jury. Now, you did, Judge Sullivan, mention this issue of extrinsic bias and whether that was a basis for the decision to discharge juror number six. And there is considerable reliance in the government's brief on the decision by United States v. Spruill. But I would submit, in that case, in every holding in that case addressing this issue, the majority opinion in Spruill is very careful to note that that decision was able to be made by Judge Chantigny in the district court without any reference to the juror's deliberations. Every time the majority rules on that issue, it states that. And so that, again, is distinguishable from this case in which juror number six voluntarily and perhaps against the wishes of the district court judge did state on the record that his views of the evidence, his evaluation of the case was different from those of his fellow jurors and was, therefore, giving rise to a possibility, which is all that Thomas requires, that it was his views of the case that prompted him to seek discharge. But Judge Park, could I ask you about, oh, sorry. No, go ahead, Judge Park. I just wanted to ask you about the second part of your last statement, that it was that his view, juror six's view, was different from his fellow jurors. I didn't see in the colloquy with Judge Seibel where there was any indication that juror six was a holdout, and that was a reason why he wanted an excuse. Yeah, I would go to, again, I've cited it before, but that is the best instance of it, at 745 in the joint appendix. The whole quote, what I am saying is that, if I may speak, Your Honor, my evaluation of the case may be vastly different then. And I do recognize that it requires an inference that juror number six was going to finish that sentence with the other jurors or the rest of the jury, but that is the only place he could have been going, having started in that way. But Judge Seibel then responded and said that your experience is only a problem if it's going to prevent you from being open-minded. That's correct. And he did say that he could not be fair and he could not be open-minded. I think the problem is for a district judge, I mean, you know, and if Judge Seibel had said, well, you got to stay in there anyway, I imagine that that would be a basis to be appealing in the event of a conviction because she didn't remove him. I mean, we can't put district judges in a situation where they're damned if they do and they're damned if they don't. So, whether it's a good policy, I agree with you, Judge Sullivan, is a hard question to debate. It is what Thomas requires. And there are circumstances, and Spruill actually addresses one of them, where the defense moved for the dismissal of a juror and raised this issue of not just forfeiture under a plain error standard, but waiver by the conscious choice of the defense to seek the dismissal of the juror. But Thomas requires the hard thing, and I don't think there can be a reasonable debate about what the text of Thomas requires, which is that juror cannot be dismissed. That juror must be sent back to deliberate with the rest of the jury until a verdict is reached or some other outcome results in a mistrial of the case. This is very demanding for the district court and demands a lot of district court judges and also the jurors who serve on our juries, but it is what the law here requires. That is my time. Counsel, you never got to your first issue, which is the FBI agent testifying to drug terms, but we have read your brief. Okay, thank you. I will, if you want me to, I obviously can. No, that's fine. Let's hear from the government on this issue. Counsel. Good morning, Your Honors, and may it please the court. My name is Matthew Andrews, and I represent the United States in this matter, as I did in the trial below. The appellant, Chanju Carroll, was convicted of conspiracy to distribute narcotics after a nearly weeks-long jury trial. The evidence against him was overwhelming and included, among other things, nearly a to buy and sell large quantities of cocaine. Judge Seibel properly dismissed juror number six, who stated on the record that he had an external bias that prevented him from being fair and impartial, and in particular, a traumatic childhood experience during which he was falsely arrested and prosecuted by law enforcement. Judge Seibel also properly admitted Officer Kerwick's expert testimony under any applicable standard of review. The court should accordingly affirm the judgment below. As with the appellant, I'll also start with Judge Seibel's dismissal of juror number six, since that seems to be his primary argument on appeal. As stated on the record, juror number six stated multiple times that he could not be fair and impartial, and he did so because he— Counsel, let me interrupt. Didn't he say each time that he would try to be fair? That's correct. That was when he first came out after the first jury vote. And even when he came out the second time, didn't he say he would continue to try to be fair? Well, I believe, Your Honor, that he said that he could not be fair. The specific portion is on pages 760 to 761. And the juror says, I gave it a try, and I was thinking about the case. But again, the experience that I had was just too traumatic. What happened to me was really traumatic and is eating at me because the experience I'm having here is bringing back the past. And Judge Seibel then asked, and that's preventing you from being a fair and impartial juror, to which juror number six responded, yes, Your Honor. And these circumstances, Your Honor, are actually quite similar to those circumstances in United States v. Ruggiero, which is cited in United States v. Thomas. United States v. Ruggiero is 928 F2D 1289. In Ruggiero, the jury was deadlocked 11 to 1, and the juror came out and said that he had encountered two men in his driveway the evening before the case was submitted to the jury. And that juror said initially that some aspects of his vote to acquit were motivated by the evidence, but other aspects were motivated by fear. The district court then engaged in a colloquy to which the juror in that case stated that unequivocally that he was voting out of fear. And on appeal, the Second Circuit upheld the district court's decision to excuse the juror, finding that it would be rash indeed to second-guess the conclusion of an experienced trial judge. Now, Judge Pooler, I believe that in your dissent in Sproul, one of your main concerns was that juror number 11 in that case had initially come out and said that the juror would try. But in your opinion, as you write, there was a concern about whether that juror had simply stated that it was this external bias because the juror did not want to have a confrontation with the other jurors. The juror didn't want to have to engage in this type of conflict. But here, but here, Your Honor, Judge Seibel stated on the record that Judge Seibel credited the juror's sincerity about his inability to be fair and impartial based on his demeanor at the time. And there's a colloquy in the record to this effect. And that colloquy, Your Honor, is, if you give me one second, on the same page that the juror is discussing their inability to be fair and impartial, and that's in the joint appendix at 759. The court discusses with defense counsel that as the court determined from his demeanor, he's unequivocal that he can't be fair. And defense counsel raises the possibility, well, maybe he wants to avoid a contentious jury deliberation, to which the court notes, I suppose that's possible. But based on his demeanor, he, quote, seems sincere. He seems like he's trying. But you take a look at him, you can see that he's sorrowful. And you know that before this note is arguable, but now it's not whatsoever. Which under this court's precedent, that is a factual finding that is entitled to deference under this court's view of the law. But going back to Spruill as well, there are obviously some arguments about the scope of Thomas, and the motivating factor within Thomas was that in some circumstances, it can be very difficult to determine whether a juror's request to be removed stems from the sufficiency of the evidence or stems from some type of impermissible bias. And obviously, there was a disagreement within Spruill as to the scope of Thomas's any-possibility rule. But I don't believe that any judge participating in that decision believes that the Thomas any-possibility rule applies to every single instance that a juror is removed. Instead, Judge Pooler has even noted in your dissent, there are circumstances where a juror can be removed when a judge can easily identify what the external bias is and do so without having to intrude within the juror's deliberative process. In your honor, even, this cites to the portion of Thomas that discusses the Ninth Circuit's decision in a gunner way. And in a gunner way, which is 969 F2B 757, the Ninth Circuit upheld the removal of a deliberating juror whose girlfriend had been arrested and mistreated by the police. Now here, the circumstances are even more extreme because it is the juror himself who suffered this type of police misconduct and not his girlfriend. Now very quickly, your honors, I would like to just cover the subject matter within the first portion of the appeal, which was Officer Kerwick's testimony. As I mentioned before, Officer Kerwick's testimony was proper under any applicable standard of review. And the appellant does not dispute the majority of Officer Kerwick's testimony concerning coded words and language within his direct examination. Instead, it's limited to just a number of three to four words or phrases, several of which the appellant was not even a party to. And in each instance, Officer Kerwick provided a foundation as to why they're indicia that these were drug conversations. Thus, they're proper under this court's precedent. And also, there is no error in any instance in allowing for that type of testimony to come in. And unless the court has any questions, I believe I can rest on my submission. Thank you, counsel. Mr. St. Laurent, you reserve two minutes for rebuttal. Yeah. Thank you, your honor. Just to address three of the points raised by the government. First, just to confirm the record, as I previously answered to a question from Judge Sullivan, Mr. Number six did say that he could not be fair. That was his ultimate answer. But again, whether he was sorrowful or whether he was, as defense counsel at the trial level argued, seeking to avoid a contentious debate is not relevant to the Thomas analysis. And Thomas is very clear as to what must be done in those circumstances. If there is any possibility that the juror's request to be charged relates to the merits of the case, that juror must not be discharged. That is the square rule of Thomas that remains good law in this circuit. And then just briefly with regards to the government's description of my addressing the expert testimony, Mr. Carroll's appeal, it was not limited to just a handful of pieces of testimony by Officer Kerwick, but rather to the cumulative effect of Officer Kerwick testifying beyond mere code words as the trial court allowed him to do. And I know my time on this issue is limited, but the defense counsel at trial did preserve that issue, both in limine motions at the pre-trial conference where Officer Kerwick's substantially discussed, and perhaps most importantly on this exact issue in the jury instructions that each side submitted, in which the defense sought to limit Officer Kerwick's testimony solely to that of code words, which admittedly would have been appropriate had the officer limited his testimony to such code words. I see my time is up. Can I just thank you, counsel? Oh, yes. I was just going to say that Judge Seibel sort of clearly stated that if there were particular questions and answers that were objectionable, that defense counsel had to object. You can't just rely on a pre-trial objection. And defense counsel responded that the government hadn't strayed outside of the bounds of the court's ruling. With one amendation, Judge Seibel asked if there were any questions or answers that went beyond or were not permitted by the court's, Judge Seibel's pre-trial ruling. And I submit that this was all, all the objections were preserved because the defense counsel had sought and obtained rulings on all of these points before Officer Kerwick's testimony. Thank you. We'll reserve decision. Thank you. Thank you both.